ACOX v GENERAL MOTORS CORPORATION (ON REMAND)

Docket No. 127213. Submitted October 3, 1991, at Detroit. Decided December 30, 1991, at 9:20 A.M.

Geraldine M. Acox, following a hearing in the Bureau of Workers' Disability Compensation, was awarded workers' compensation for chronic asthmatic bronchitis and chronic obstructive pulmonary disease contracted while she was employed by General Motors Corporation. The Workers' Compensation Appeal Board affirmed, rejecting General Motors' contention that Acox should be barred under MCL 418.431; MSA 17.237(431) from receiving benefits because she failed to disclose her history of asthma on a preemployment medical questionnaire. The Court of Appeals denied General Motors leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 434 Mich 887 (1990).

On remand, the Court of Appeals *held:*

MCL 418.431; MSA 17.237(431) provides that no compensation shall be payable for an occupational disease if the employee, at the time of entering into employment or thereafter, wilfully and falsely represents in writing that the employee has not previously suffered from the disease that is the cause of the disability. Section 431 does not apply in this case because Acox's preemployment asthma was an ordinary disease of life, not an occupational disease, and an ordinary disease of life is not converted into an occupational disease by virtue of workplace aggravation or acceleration.

Affirmed.

WORKERS' COMPENSATION — PREEXISTING DISEASES — NONDISCLOSURE.

The statutory provision that precludes recovery of workers' compensation on the basis of a wilful failure to disclose to an employer a preexisting occupational disease does not apply to a claimant who fails to disclose an ordinary disease of life unrelated to employment (MCL 418.431; MSA 17.237[431]).

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 293, 295, 333.
See the Index to Annotations under Disclosure; Workers' Compensation.

*Vigiletti & McCrandall, P.C.* (by *Susan A. Mc-Crandall*), for the plaintiff.

*William O. Kelly, Jr.,* for the defendant.

Before: SHEPHERD, P.J., and HOLBROOK, JR., and CONNOR, JJ.

PER CURIAM. Defendant sought leave to appeal an April 4, 1989, order of the Workers' Compensation Appeal Board affirming a referee's award of benefits for a lung-disease disability. We denied leave to appeal on August 31, 1989. The Supreme Court remanded the matter to this Court for consideration as on leave granted, 434 Mich 887 (1990). On remand, we affirm the decision of the WCAB.

Plaintiff began working for defendant at age thirty-two in 1976 as a core setter in defendant's foundry. After about three months, she began to experience breathing difficulties due to atmospheric pollutants in the foundry air. Plaintiff was on sick leave for bronchial infections or asthma on several occasions between September of 1976 and June of 1978, during which time defendant voluntarily paid compensation benefits.

Eventually, defendant transferred plaintiff to its motor assembly plant, with restrictions against working in areas when there was dirt, dust, or fumes. However, plaintiff continued to experience breathing difficulties due to fumes from nearby engine-painting booths. She was hospitalized in July of 1982 with asthma and chronic obstructive pulmonary disease. Plaintiff was off work four separate times during 1982 and 1983 because of her lung problems. She was laid off from Septem-

ber of 1983 until January 12, 1984. At the January 18, 1984, hearing, plaintiff testified that she was on sick leave for reasons unrelated to her lungs.

Plaintiff filed a petition for hearing with the Bureau of Workers' Disability Compensation, alleging a lung disability. Plaintiff claimed injury dates of June 1, 1977, and July 6, 1982, for her lung disability and sought compensation benefits for four closed periods in 1982 and 1983.

At the hearing before the referee, plaintiff acknowledged that she told her treating physician of a history of asthma since age 20. She further testified that there is a history of asthma in her family and that she had bronchial pneumonia a couple of times before she went to work for defendant. Plaintiff also admitted to indicating that she did not have asthma or lung trouble on a written medical-history questionnaire when hired by defendant, but testified that she felt that she answered the questionnaire truthfully, because she did not believe that she had lung problems, other than past bouts of pneumonia, at the time the questionnaire was completed.

Medical reports and records established that plaintiff's lung condition was not caused by her exposure to silica and oil fumes in the workplace. Plaintiff was diagnosed as having chronic asthmatic bronchitis and possible obstructive lung disease.

In the hearing before the referee, defendant contended that plaintiff's failure to inform defendant of her lung condition on the employment form at the time she was hired should bar plaintiff from benefits under MCL 418.431; MSA 17.237(431). The hearing referee held that plaintiff did not violate that section because her prior condition was not an occupational disease as defined in MCL 418.401(2)(b); MSA 17.237(401)(2)(b),

but an ordinary disease of life. Upon review, the WCAB affirmed the referee's decision, but did not directly address the issue whether plaintiff suffered an occupational disease. The WCAB held that defendant failed to establish reliance on plaintiff's statements made in the medical questionnaire in deciding whether to hire plaintiff.

On appeal, defendant raises two issues for our resolution: first, that the WCAB erred in not finding that plaintiff suffered from an occupational disease, and, second, that defendant was not required to establish reliance on plaintiff's statement in order for § 431 to bar plaintiff's claim.

Section 431 provides, in part, as follows:

> No compensation shall be payable for an occupational disease if the employee at the time of entering into the employment of the employer by whom the compensation would otherwise be payable, or thereafter, wilfully and falsely represents in writing that he has not previously suffered from the disease which is the cause of the disability or death.

In determining this Court's standard of review of the WCAB's decision, we note that this case was decided in 1984, well before changes that modified the way workers' compensation cases are decided were made. *Palmer v ITT Hancock,* 189 Mich App 509, 510-511; 474 NW2d 136 (1991). Accordingly, our review is limited to determining questions of law, determining whether there was any fraud associated with the WCAB's findings, and determining whether there was any competent evidence in the record to support those findings. *Id.,* 511, citing *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978), MCL 418.861; MSA 17.237(861).

Both issues before this Court require interpreta-

tion of § 431. First, what is meant by an "occupational disease," and, second, whether an employer must rely on the false statement in order for § 431 to act as a bar. Neither this Court nor the Supreme Court has conclusively decided these questions upon similar facts.

Although § 431 does not define "occupational disease," a definition can be found at MCL 418.401(2)(b); MSA 17.237(401)(2)(b), which provides: "a disease . . . which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment." In contrast, an ordinary disease of life is one "to which the public is generally exposed outside of the employment." *Id.* See also *Dresser v Grand Rapids Die Casting Corp,* 402 Mich 243, 256; 262 NW2d 629 (1978).

We find that the referee's determination that plaintiff's preexisting lung condition was an ordinary disease of life is supported by competent evidence on the record.

Plaintiff's preexisting condition was asthma. The only evidence offered regarding the cause of plaintiff's asthma tends to indicate that it is hereditary rather than work-related. There was no evidence offered by defendant that plaintiff had prior employment that might have caused or even aggravated plaintiff's condition.

Focusing on conditions in its own plant, defendant suggests that "[p]laintiff's pre-existing lung condition inevitably developed into an occupational disease," and consequently § 431 would bar recovery. We believe an ordinary disease of life is not converted into an occupational disease by virtue of workplace aggravation or acceleration. The statute, in another provision, recognizes the distinction between occupational diseases and other-

wise noncompensable diseases aggravated by an occupational disease by allowing compensation only for the amount of disability caused by the occupational disease alone. Such allocation would be unnecessary if ordinary diseases of life become occupational diseases whenever they are aggravated or accelerated by employment.

Furthermore, even if we were to assume that plaintiff now suffers from an occupational disease, we still do not believe that that fact alone would bar her claim. Section 431 is intended to bar compensation when the plaintiff falsely and wilfully misstates that a prior occupational disease did not exist at the time of hire, and the preexisting occupational disease leads to a disability in the new employment. See *Dressler, supra,* 248, 255; *DeVores v Ford Motor Co,* 171 Mich App 354, 362; 429 NW2d 900 (1988). Nothing in the act clearly mandates the disclosure of nonoccupational diseases. To the contrary, the plain meaning of the terms in the statute indicates that a prospective employee is under a duty to disclose only preexisting occupational diseases at the time of hire. We believe this conclusion must follow from the Legislature's use of the phrase, "that he has not previously suffered from *the disease,*" referring to the occupational disease that is the cause of the disability and claim for benefits. No provision is made in § 431 for denying benefits for undisclosed ordinary diseases of life.

Because defendant did not establish that plaintiff's preexisting condition was the result of prior employment, we believe that the hearing referee properly held that plaintiff did not have a prior occupational disease that would bar her claim under § 431.

The second issue raised by defendant is that the WCAB erred as a matter of law in ruling that

defendant had not established reliance on plaintiff's employment application. It is defendant's claim that § 431 does not require reliance by the employer and that the WCAB cited dicta to enforce this requirement.

The WCAB cited *Leach v Detroit Health Corp*, 156 Mich App 441; 402 NW2d 38 (1986), in support of its decision that defendant bore the burden of establishing reliance on the false statement in order for § 431 to apply. In dicta in *Leach, supra,* 446-447, the panel discussed the "Larson Rule" for the use of false statements in employment applications to bar compensation benefits, 1C Larson, Workmen's Compensation, § 47.53, pp 8-417 to 8-418. The rule developed by Professor Larson is explained as follows:

> What seems to be emerging, in place of a conceptual approach relying on purely contractual tests, is a common-sense rule made up of a melange of contract, causation, and estoppel ingredients. The following factors must be present before a false statement in an employment application will bar benefits: (1) The employee must have knowingly and wilfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury. [*Id.,* 8-418.]

The panel in *Leach* discussed Professor Larson's test and found that the defendant did not establish reliance, but expressly did not adopt the test. 156 Mich App 447.

On appeal, the Supreme Court remanded the case to the WCAB for findings of fact under the "Larson Rule" and "other questions of fact reasonably related to equitable estoppel as proposed by

the parties." 428 Mich 887 (1987). The order specifically provided that it should not be interpreted as adopting the "Larson Rule" as the law of the state, and the Supreme Court retained jurisdiction. *Leach* was originally decided along with *Thompson v Michigan Bell Telephone Co,* unpublished opinion per curiam of the Court of Appeals, decided December 1, 1986 (Docket No. 90769). The Supreme Court remanded *Thompson* to the WCAB for clarification of the issue of the defendant's reliance on the plaintiff's health history form. 428 Mich 887 (1987). Leave was denied in both cases after they were remanded to the WCAB. 431 Mich 904 (1988). From our review of the decision in *Leach* (and presumably *Thompson,* as well), we believe the appeal was generated by the WCAB's failure to address the defendant's argument that the claim for benefits was barred under § 431 because the plaintiff made a false statement of a medical condition at the time of hire. 156 Mich App 445-446. Presumably, this preliminary issue should have been addressed by the factfinder initially.

More recently, the opinion in *DeVores, supra,* 360-361, also cited the "Larson Rule," but the analysis did not depend upon the application of the rule.

In light of the foregoing, we agree with defendant that to date, the "Larson Rule" has not been adopted as the law of this state, to be read in conjunction with § 431. We similarly decline to address the issue because it would also be dicta in this case, given our conclusion that § 431 does not apply to the facts of this case by its plain terms. We leave the issue to another case and another day.

Affirmed.