681 S.E.2d 567

**Lawrence BRAYBOY, Employee, Respondent,**

v.

**WORKFORCE, Employer and American Home Assurance, Carrier, Defendants,**

**Of Whom WorkForce, Employer, is the Appellant.**

**No. 26675.**

Supreme Court of South Carolina.

Heard April 9, 2009.

Decided June 22, 2009.

Rehearing Denied Aug. 19, 2009.

Kirsten L. Barr, of Trask & Howell, of Mt. Pleasant, for Appellant.

John S. Nichols, of Bluestein & Nichols, of Columbia and Matthew Jackson, of Joye Law Firm, of North Charleston, for Respondent.

Justice KITTREDGE.

In this workers' compensation case, claimant Lawrence Brayboy made material misrepresentations on his employment application. Subsequently, Brayboy claimed workers' compensation benefits, which the Workers' Compensation Commission awarded. The circuit court upheld the award on the basis of the substantial evidence standard of review. Because the issue of Brayboy's employment status is jurisdictional, the Court makes findings based on its view of the preponderance of the evidence. We find the employer, WorkForce, established the three-factor test in *Cooper v. McDevitt & St. Co.*, 260 S.C. 463, 468, 196 S.E.2d 833, 835 (1973), and reverse.

## I.

On April 18, 2003, Brayboy sustained a back injury, which required lumbar fusion surgery. On the day of the injury, Brayboy moved a lot of lumber and while removing a chain link fence, he felt a terrible pull in his back. Brayboy worked the entire day, which was a Friday, and reported the injury on Monday. Subsequently, Brayboy filed a workers' compensation claim against his putative employer, WorkForce.

Brayboy's employment application included the following disclaimers:

*If I do not give accurate and truthful information on this Medical History Questionnaire, which forms the second and final part of my employment agreement, the entire employment agreement shall be considered null and void.*

**MISREPRESENTATIONS AS TO PREEXISTING PHYSICAL OR MENTAL CONDITIONS MAY CAUSE FORFEITURE OF YOUR WORKERS' COMPENSATION BENEFITS.**

(emphasis in original). Notably, Brayboy signed his name under these cautionary statements. Despite these warnings, Brayboy responded in the negative to all questions inquiring if Brayboy had prior back injuries, physical defects, medical conditions, or previous workers' compensation claims. However, at the workers' compensation hearing, Brayboy testified about multiple prior physical problems. These conditions included a back injury while in the Navy, a back injury in 1996 resulting in a workers' compensation claim, and a pinched nerve in 1996.

Specifically, during his service in the Navy in the early 1970s, Brayboy fell, slid on the ship's deck, and hit a rail. According to Brayboy, the Navy x-rayed his back and gave him medicine for treatment. The Navy also diagnosed Brayboy with a back deformity he had since birth—a missing piece of bone. Brayboy further stated he was honorably discharged in 1973 due to his back defect.

Notably, since the 1970s, Brayboy has received benefits from the Department of Veterans' Administration (VA). The impairment rating increased from ten to twenty percent due to a pinched nerve. Following the 2003 injury, the VA raised Brayboy's disability rating from twenty to forty percent as the "service connected condition(s) has/have worsened."

Brayboy further testified he filed a workers' compensation claim in 1996 while working for McCrory Construction. The claim arose from an accident when Brayboy was in a hole thirty to forty feet deep taking measurements while other workers poured concrete for a parking garage. Brayboy stated a backhoe was too close to the edge of the hole, and "[the hole] collapsed, and I was pulled out by several of my workers." This accident injured Brayboy's middle to low back and right ankle.

Brayboy filed a workers' compensation claim for this injury, received a settlement for this claim, and was given a five percent impairment rating for his back as well as five percent for his ankle. Brayboy testified in deposition that his current

back pain was "primarily in the same area" as the cave-in injury; however, at the hearing, he disputed the similarity of the injuries. Additionally, Brayboy testified he suffered a pinched nerve in his right hip in 1996. This was unrelated to the cave-in and was due to wearing a heavy tool belt.

Brayboy testified he did not report any of his prior injuries to WorkForce as he did not feel the injuries were relevant to a construction job. Also, Brayboy stated he did not include the cave-in injury as it had "cleared up very quickly."

The single commissioner found a compensable injury and Brayboy credible when testifying he filled out the employment application in adherence to his belief he was neither permanently impaired nor disabled. The Workers' Compensation Commission upheld the award of the single commissioner. The circuit court affirmed.

WorkForce appealed and the court of appeals issued an unpublished opinion reversing. Following a petition for rehearing, the court of appeals withdrew its opinion and requested certification under Rule 204(b), SCACR. We granted certification.

## II.

The existence of an employment relationship is a jurisdictional issue for purposes of workers' compensation benefits reviewable under the preponderance of the evidence standard of review. *Glass v. Dow Chem. Co.*, 325 S.C. 198, 201–02, 482 S.E.2d 49, 51 (1997); *Vines v. Champion Bldg. Prods.*, 315 S.C. 13, 16, 431 S.E.2d 585, 586 (1993); *Givens v. Steel Structures, Inc.*, 279 S.C. 12, 13, 301 S.E.2d 545, 546 (1983); *Cooper v. McDevitt & St. Co.*, 260 S.C. 463, 466, 196 S.E.2d 833, 834 (1973); *Chavis v. Watkins*, 256 S.C. 30, 32, 180 S.E.2d 648, 649 (1971); Hon. Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 170 (2d ed.2002).

We must determine if Brayboy was an employee at the time of his injury and thus eligible for workers' compensation benefits. *Alewine v. Tobin Quarries, Inc.*, 206 S.C. 103, 109, 33 S.E.2d 81, 83 (1945) ("No award under the [Workers' Compensation] Act is authorized unless the employer-employee relationship existed at the time of the alleged injury for

which claim is made. This relation is contractual in character . . . ."). An employee is statutorily defined in section 42–1–130 of the South Carolina Code (Supp.2008) as "every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written . . . ." Brayboy asserts his status as an employee as a result of the contract for hire with WorkForce. WorkForce relies on the principle that an employment relationship may be vitiated when there is a material misrepresentation in the employment contract. *Givens*, 279 S.C. at 13, 301 S.E.2d at 546.

In *Cooper*, this Court set forth three necessary factors for a material misrepresentation in the employment application to vitiate the employment relationship:

(1) The employee must have knowingly and wilfully made a false representation as to his physical condition.

(2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. [and]

(3) There must have been a causal connection between the false representation and the injury.

260 S.C. at 468, 196 S.E.2d at 835.

We are firmly convinced that WorkForce has established all three factors. First, Brayboy failed to report a host of prior back problems, as well as a prior workers' compensation claim for an injury to his back. The willful nature of Brayboy's false responses pervades the record. Brayboy admits he provided false information on the employment application. The suggestion that Brayboy could make material misrepresentations on his employment application because he believed he was fit for construction work is a specious position.

Turning to part two of the test, WorkForce presented credible evidence it relies heavily on the employment application. In this regard, WorkForce's reliance is twofold: the employment application is important in the hiring *and* placement decisions. Clearly, the questionnaire portion of the application protects the employer and employee. Had Brayboy given truthful information, WorkForce would have been

able to give him suitable job assignments, which would not have included heavy lifting. Even Brayboy at one point conceded the importance of providing truthful information on the employment application when he stated, "[WorkForce] wouldn't want to put a person with impairments or disabilities on a construction job that [he] couldn't handle." We find WorkForce detrimentally relied on Brayboy's fraudulent application.[1] *Small v. Oneita Indus.*, 318 S.C. 553, 554–55, 459 S.E.2d 306, 306–07 (1995) (noting an agent of the employer testified Small's prior injury would affect job placement decisions, not hiring decisions, and affirming the denial of workers' compensation benefits due to a false representation on an employment application).

Concerning the third factor, we find irrefutable evidence of a causal connection between the false information and the aggravation of his preexisting back injury. Brayboy conceded that the April 2003 injury was in "primarily in the same area" as the 1996 cave-in injury. The April 2003 injury is also directly linked to his military disability, as evidenced by the VA raising Brayboy's disability rating from twenty to forty percent as the "service connected condition(s) has/have worsened."

Pursuant to *Cooper*, we hold Brayboy's fraudulent responses on his employment application vitiated his employment relationship and barred his recovery of workers' compensation benefits.

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

1. WorkForce provides temporary employment and, therefore, a WorkForce employee may be assigned to various jobs during their employment. On the day of his alleged injury, Brayboy was assigned to heavy labor, the very type of assignment WorkForce claims it would not have given Brayboy had he been truthful in his employment application.