# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Isaac D. Brailey, Claimant, Appellant,

v.

Michelin North America, Inc., (US7), Employer, and
Safety National Casualty Corp., Carrier, Respondents.

Appellate Case No. 2019-000556

───────────

Appeal From The Workers' Compensation Commission

───────────

Opinion No. 5906
Heard February 9, 2022 – Filed April 27, 2022
Withdrawn, Substituted, and Refiled November 2, 2022

───────────

## REVERSED AND REMANDED

───────────

Stephen Benjamin Samuels, of Samuels Reynolds Law
Firm LLC, of Columbia, for Appellant.

Grady Larry Beard and Jasmine Denise Smith, both of
Robinson Gray Stepp & Laffitte, LLC, of Columbia, for
Respondents.

───────────

**WILLIAMS, C.J.:** Isaac D. Brailey appeals the order of the Appellate Panel of
the South Carolina Workers' Compensation Commission (the Commission)
denying his claim for benefits against Michelin North America, Inc. Brailey
contends the Commission erred in finding (1) he failed to prove he sustained a
compensable injury; (2) his claim was barred by the fraud in the application

defense under *Cooper v. McDevitt & Street Co.*;[1] (3) Michelin proved the elements of *Capers v. Flautt*;[2] and (4) he intentionally and willfully caused injury to himself. We reverse and remand, finding Brailey's injury is compensable under South Carolina's workers' compensation law.

## FACTS/PROCEDURAL HISTORY

Brailey was hired by Michelin on April 17, 2017. He passed a physical during Michelin's hiring process and was cleared for full duty. He trained as a rubber stretcher for very large mining tires. In his deposition, Brailey denied being trained in the correct procedures for filing workers' compensation claims or for reporting injuries at work. He said his back started bothering him when he began the physical work at Michelin, but his supervisor and the Michelin nurse told him it was normal to have back pain when stretching rubber. Brailey went to the emergency room (ER) on June 11, 2017, for back pain. He did not tell anyone at Michelin, and he was not ordered out of work. The ER doctor prescribed Flexeril for the back pain. Brailey stated he saw his family doctor for minor back pain on June 13. The medical records from the visit with his family doctor showed Brailey described pain that was a "ten out of ten" and showed that Brailey had been having back pain for two weeks prior to the visit. He did not disclose the June 13 doctor's visit to Michelin, and he was not ordered out of work by the family doctor on June 13.

On Saturday, June 24, 2017, Brailey suffered sharp back pain while stretching rubber at Michelin. He tried to see the Michelin nurse but the office was closed. He went to the ER and was prescribed multiple pain medications and restricted from work for three days. Brailey claimed he called his supervisor during the ER visit and the supervisor told him to see the Michelin nurse. Brailey told him the nurse's office was closed, and the supervisor told him to wait until Monday. The Michelin nurse called Brailey and told him to relax, take Aleve, and see the Michelin doctor on Monday morning.

Brailey saw Michelin's doctor, Dr. Stephen Izard, on Monday, June 26. Dr. Izard told him to take Ibuprofen and Flexeril, to not follow up with a neurosurgeon, and to return to work on June 27 with no restrictions. Despite instructions from his Michelin supervisors to follow up with Dr. Izard, Brailey missed his follow up appointment because he did not want to drive while taking pain medicine and refused transportation offered by Michelin. He did not return to work at Michelin

---

[1] 260 S.C. 463, 196 S.E.2d 833 (1973).
[2] 305 S.C. 254, 407 S.E.2d 660 (Ct. App. 1991).

after June 24.  He went back to the ER on June 27 because he was feeling "terrible."  He received an x-ray and a shot and was restricted from work for three days.

The ER referred Brailey to Dr. Scott Boyd, a neurosurgeon.  Dr. Boyd ordered an MRI and physical therapy in July 2017.  Dr. Boyd filled out a medical questionnaire that stated it was his opinion to a reasonable degree of medical certainty that, more likely than not, Brailey injured his lumbar spine at his employment on June 24, 2017.  Dr. Boyd stated in his deposition that Brailey had a herniated disk and there was no way to tell how long it had been present.  Dr. Boyd recalled that Brailey told him he injured his back on June 24 stretching rubber at Michelin and he had previous back problems twenty-five years ago that resolved without treatment.

During his deposition, Dr. Boyd reviewed Brailey's medical records from his June 11 and June 13 doctor's visits.  Dr. Boyd stated that Brailey's complaints and symptoms of back pain on June 11 and 13 were similar to what he reported on June 24 but were perhaps more severe on June 24.  Under cross-examination, Dr. Boyd stated he was uncertain about the exact date of Brailey's injury.  At the conclusion of the deposition, Dr. Boyd opined, "I believe, based on his history and in his records, that [the injury] was related to his work at Michelin in the continuum with some event on about June 24 that made things worse."

At the hearing before the single commissioner, Brailey testified about his prior work history.  He recalled that he experienced middle-back pain three weeks after beginning work at Richtex Brick in 1997.[3]  Brailey was placed under a no-heavy-lifting restriction in 1997 until he saw a surgeon.  He did not see a surgeon and settled a workers' compensation claim with Richtex Brick for $2,500.[4]  Brailey then worked at Westinghouse for sixteen years before being laid off.  Brailey indicated he did not suffer from back pain while working at Westinghouse.

Brailey testified that during training at Michelin in 2017, he filled out a form that asked if he had ever had medical attention for back injury, backache, or back pain.  He answered "no" on the form.  Brailey did not list Richtex Brick as a previous employer on his Michelin employment application.

---

[3] Brailey claimed his current pain was in a different area of his back.

[4] The doctor at Richtex Brick noted that Brailey was probably not physically able to perform the work at Richtex Brick and may have had a "litigation thought process."

The safety manager at Michelin, Mark Gross, testified that all incoming employees are trained in safety and workers' compensation protocol. Gross verified that Michelin relies on the answers given by employees on hiring forms. Gross stated that he called Brailey in June 2017 to offer to send a taxi to pick him up for the follow-up visit with Dr. Izard. Brailey told him to talk to his lawyer and hung up on him.

Brailey filed a workers' compensation claim that Michelin denied in July 2017. After a hearing, the single commissioner denied the claim. In affirming the single commissioner's denial of benefits to Brailey, the Commission found Brailey was not credible based on his testimony and the single commissioner's observations of him. The Commission found Brailey was not clear about the date of injury and found the medical records were inconsistent with his testimony. The order noted that Brailey had a "very similar incident" at Richtex and omitted information about Richtex on his Michelin employment application. The Commission found that Brailey

> repeatedly attempted to justify his answers during his testimony. We find that while testifying, the claimant gave confusing answers when asked direct questions by his attorney. As noted by the [single] [c]ommissioner throughout the proceeding, the claimant provided vague responses when questioned by defense counsel. He would not answer defense counsel's questions, rambling through responses.

The Commission's order stated "causation [was] not provided in the medical records because Dr. Boyd had no knowledge of the extent of claimant's prior back issues." The order noted Dr. Boyd opined on the medical questionnaire that "[Brailey] injured his lumbar spine at Michelin on June 24, 2017, the injury resulted in radiculopathy down [his] left leg, . . . and [Brailey] had not reached maximum medical improvement." The order further stated that Dr. Boyd opined in his deposition that "more likely than not, [Brailey] injured his lumbar spine at Michelin, including 'some episode on June 24.'"

The Commission found Brailey committed fraud in the application for employment with Michelin because he knowingly and willfully made a false representation as to his prior back condition on a Michelin medical questionnaire and Michelin relied on those false answers.

The order stated,

This claim is denied in its entirety based on evidence of numerous issues relating back to 1997 through 2017. The claimant has failed to carry his burden of proof of an accident being sustained on June 24, 2017, due to his lack of credibility, the lack of sufficient medical evidence to support his allegations, and moreover, due to medical evidence to the contrary. We find the claimant was unable to return to work after June 24, 2017, due to a previous incident. We find the June 24, 2017, incident is not compensable based upon the greater weight of the evidence and the other reasons stated within this finding.

The order stated Brailey "did not sustain compensable injury to his low back while under the employ of [Michelin] on June 24, 2017, as alleged." The order also stated,

Under § 42-9-60, assuming [Brailey] actually sustained an injury by accident on June 24, 2017 . . . [he] intentionally and willfully did so by failing to alert or notify his employer he was allegedly suffering from ten out of ten low back pain for at least 4 weeks prior to that date and seeking medical treatment on his own without any knowledge by his employer due to his failure to provide same.

This appeal followed.

**ISSUES ON APPEAL**

I.      Did the Commission err in finding Michelin proved the elements of the *Cooper v. McDevitt & Street* defense?

II.     Did the Commission err in finding the claim was barred by *Capers v. Flautt*?

III.    Did the Commission err in finding Brailey's claim was barred by section 42-9-60 of the South Carolina Code (2015)?

IV.     Did the Commission err in finding that Brailey did not meet his burden of proof to show he injured his back in an accident arising out of his employment at Michelin?

**STANDARD OF REVIEW**

"The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions of the Workers' Compensation Commission." *Bass v. Isochem*, 365 S.C. 454, 467, 617 S.E.2d 369, 376 (Ct. App. 2005); *see also* S.C. Code Ann. § 1-23-380 (Supp. 2021). "An appellate court's review is limited to the determination of whether the Commission's decision is supported by substantial evidence or is controlled by an error of law." *Clemmons v. Lowe's Home Ctrs., Inc.-Harbison*, 420 S.C. 282, 287, 803 S.E.2d 268, 270 (2017). This court "may reverse or modify the [Commission's] decision if substantial rights of the appellant have been prejudiced because the [Commission's] findings, inferences, conclusions, or decisions are . . . affected by other error of law [or] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Frampton v. S.C. Dept. of Nat. Res.*, 432 S.C. 247, 256, 851 S.E.2d 714, 719 (Ct. App. 2020) (final alteration in original) (quoting § 1-23-380(5)(d), (e)).

In workers' compensation cases, the Commission is the ultimate fact finder, and its findings are presumed correct and will not be set aside unless unsupported by substantial evidence in the record. *Holmes v. Nat'l Serv. Indus.*, 395 S.C. 305, 308, 717 S.E.2d 751, 752 (2011). "'Substantial evidence' is not a mere scintilla of evidence[,] nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached . . . in order to justify its action." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (quoting *Law v. Richland Cnty. Sch. Dist. No. 1*, 270 S.C. 492, 495–96, 243 S.E.2d 192, 193 (1978)). When evidence conflicts, either in testimony given by different witnesses or by the same witness, the Commission's factual findings are conclusive. *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 492–93, 541 S.E.2d 526, 528 (2001). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Liberty Mut. Ins. v. S.C. Second Inj. Fund*, 363 S.C. 612, 620, 611 S.E.2d 297, 301 (Ct. App. 2005). "The final determination of witness credibility and the weight to be accorded evidence is reserved to the [Commission]." *Brunson v. Am. Koyo Bearings*, 395 S.C. 450, 455, 718 S.E.2d 755, 758 (Ct. App. 2011).

**LAW/ANALYSIS**

**I.       Fraud in the Application Defense**

Brailey argues the Commission erred in finding Michelin proved the elements of fraud in the employment application under *Cooper v. McDevitt & Street Co.* We agree.

The *Cooper* court set forth the following factors that must be present before a false statement in an employment application will bar benefits:

> (1) The employee must have knowingly and wil[l]fully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation[,] and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

*Cooper*, 260 S.C. at 468, 196 S.E.2d at 835. "All factors must be present for the employer to avoid paying benefits." *Vines v. Champion Bldg. Prods.*, 315 S.C. 13, 16, 431 S.E.2d 585, 586 (1993).

Here, the Commission made the following findings of fact with regards to the *Cooper* defense:

> We find Dr. Boyd provided restrictions of no heavy lifting. However, we find causation is not provided in the medical records because *Dr. Boyd had no knowledge of the extent of [Brailey's] prior back issues*. This finding is based upon the greater weight of the evidence in the record, the deposition testimony of Dr. Boyd, and the testimony of [Brailey].
>
> We find [Brailey] knowingly and willfully made a false misrepresentation as to his prior back condition. We find [Michelin] relied on the claimant's misrepresentations on his post-hire medical questionnaire. *We find a causal relationship exists between [Brailey's] prior back problems and the subsequent back problems arising from his alleged work-related accident.* This finding is based upon the testimony of all witnesses and the medical evidence in the record.

(emphases added). The Commission concluded as a matter of law that all three *Cooper* elements were met in this case.

While substantial evidence supports the Commission's findings that Michelin met the first two *Cooper* elements,[5] Michelin has not proven a causal connection between the false representation and the injury. *See Corbin v. Kohler Co.*, 351 S.C. 613, 624, 571 S.E.2d 92, 98 (Ct. App. 2002) ("Expert medical testimony is intended to aid the Appellate Panel in coming to the correct conclusion."); *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999) ("[W]hile medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record.").

The Commission found Dr. Boyd was not aware of "the extent" of Brailey's 1997 back injury. However, the record contains no evidence that the 1997 injury did not resolve, and the record does not indicate the "extent" of the injury. In the medical notes from 1997, the Richtex doctor noted that Brailey had been improving.

Dr. Boyd's deposition testimony shows that although he wavered on a specific date of injury he opined that Brailey's back problems were related solely to his work at Michelin, and the injury was aggravated on June 24. The record contains no medical evidence that Brailey's 1997 back injury somehow contributed to the June 24 injury or that he was predisposed to back injury. Indeed, Brailey worked at Westinghouse for sixteen years without a back injury. *See Vines*, 315 S.C. at 16, 431 S.E.2d at 586 ("There is no evidence Vines' previous injury contributed to the occurrence of the accident. Additionally, although there was evidence indicating Vines was predisposed to back injuries because of his previous injury and surgery, Vines' physician testified the accident alone without any prior injury would have been sufficient to cause an injury of this nature."); *cf. Givens v. Steel Structures, Inc.*, 279 S.C. 12, 14, 301 S.E.2d 545, 547 (1983) (finding the claimant's condition was one of disc degeneration reflecting the cumulative effect of successive injuries). Here, because the medical testimony is the only competent evidence in the record relating to a causal connection, or lack thereof, between Brailey's false representation of the 1997 back injury and the 2017 injury, the Commission erred in finding Michelin proved its fraud in the application defense. *See Burnette v. City of Greenville*, 401 S.C. 417, 428, 737 S.E.2d 200, 206 (Ct. App. 2012) (stating that when the Commission bases its finding on its own medical opinion, rather than

---

[5] Substantial evidence supports the Commission's findings that Brailey willfully and knowingly made false statements as to his physical condition to Michelin on his employment application. Further, Michelin proved it relied on those statements and they were a substantial factor in hiring Brailey.

the opinion of a medical provider, the finding is unsupported by substantial evidence in the record).  Therefore, we reverse this finding.

## II.  *Capers v. Flautt*

Brailey contends the Commission erred in finding his claim was barred by *Capers v. Flautt*.  We agree.

The *Capers* court found that contact dermatitis suffered by the claimant, a dishwasher, was not an accidental injury and had been experienced by the claimant in previous employment.  *Capers*, 305 S.C. at 257, 407 S.E.2d at 661.  The claimant's physician considered him "totally disabled from work which involved exposure to soap," but the claimant again applied for a job as a dishwasher two years later.  *Id.* at 256, 407 S.E. 2d at 661.  The court defined accident as "an unlooked for or untoward event that the injured person did not expect, design or intentionally cause" and found the contact dermatitis could have been anticipated given past experience.  *Id.*

We find the circumstances of the present case differ from *Capers* and render the case inapplicable.  Here, Brailey recovered from his 1997 back injury, and there is no indication in the record that he could have expected to have similar back problems at Michelin in 2017.  Significantly, Brailey worked at Westinghouse for sixteen years with no back problems.  Brailey testified his 1997 back injury was in a different area of his back than the 2017 injury.  Dr. Boyd's testimony and opinion, which is the only medical testimony and opinion relating to the 2017 injury, do not support the theory that Brailey's 2017 injury was non-accidental and could have been expected given past experience.  *See Mullinax v. Winn-Dixie Stores, Inc.*, 318 S.C. 431, 458 S.E.2d 76 (Ct. App. 1995) ("Where the evidence is susceptible of but one reasonable inference, the question is one of law for the court rather than one of fact for the Commission.").  Thus, we reverse this finding.

## III.  Section 42-9-60

Brailey argues the Commission erred in finding his claim was barred by section 42-9-60.  We agree.

In pertinent part, section 42-9-60 provides:

> No compensation shall be payable if the injury or death was occasioned by the intoxication of the employee *or by*

> *the wil[l]ful intention of the employee to injure or kill himself or another.* In the event that any person claims that the provisions of this section are applicable in any case, the burden of proof shall be upon such person.

(emphasis added). The record contains no evidence that Brailey deliberately intended to injure himself as described in this section, and the Commission's finding is not supported by substantial evidence. The application of section 42-9-60 is limited to "only . . . those cases where it is shown that the acts of the employee are so serious and aggravated as to evince a wil[l]ful intent to injure." *Zeigler v. S.C. Law Enf't Div.*, 250 S.C. 326, 329, 157 S.E.2d 598, 599 (1967). The facts of this case do not rise to the level of "serious and aggravated." The record contains no evidence Brailey began working at Michelin with the willful intention to injure his back. Further, he was not placed on work restriction after having back pain in the weeks before June 24, 2017, and there is no evidence in the record that his conduct was of such a serious nature as to evidence a willful intent to injure himself. *Cf. id.* at 331, 157 S.E.2d at 600 (finding a "fatal altercation was voluntarily entered into, and the conduct of the deceased was of such a grave or serious nature as to evidence a wil[l]ful intent on his part to injure his fellow employee, thereby barring any right to benefits"). Therefore, we reverse this finding.

## IV. Brailey's Back Injury

Brailey argues the Commission erred in finding he did not injure his back in an accident arising out of his employment at Michelin. We agree.

"In determining whether a work-related injury is compensable, the Workers' Compensation Act is liberally construed toward the end of providing coverage rather than noncoverage in order to further the beneficial purposes for which it was designed." *Shealy v. Aiken Co.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). "Any reasonable doubt as to the construction of the Act will be resolved in favor of coverage." *Id.* at 455–56, 535 S.E.2d at 442.

The Commission specifically grounded its findings on Brailey's lack of credibility and his "vague" and "rambling" responses. Our supreme court has noted it has affirmed the factual findings of the Commission based on credibility determinations when credibility constituted a "reasonable and meaningful basis" for the Commission's decision. *Crane v. Raber's Disc. Tire Rack*, 429 S.C. 636, 645, 842 S.E.2d 349, 353 (2020); *see also Shealy*, 341 S.C. at 455–56, 535 S.E.2d at 442 ("In cases in which we affirmed factual findings of the commission based on

its credibility determination, we did so because it made sense for the commission to use credibility as the dispositive factor in deciding the particular issue.").  Here, Brailey's credibility as to his prior workers' compensation claim and prior back injury in 1997 is not a reasonable and meaningful basis for the Commission's determination that he did not suffer an accidental injury arising out of his employment at Michelin in 2017.  Rather, the medical evidence pertaining to his 2017 injury, which consists of an MRI and the expert medical opinion of a neurosurgeon, is not contradicted and constitutes substantial evidence that supports a reversal of the Commission's order.  *See Frampton*, 432 S.C. at 256, 851 S.E.2d at 719 (noting the court "may reverse or modify the [Commission's] decision if substantial rights of the appellant have been prejudiced because the [Commission's] findings, inferences, conclusions, or decisions are . . . affected by other error of law [or] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." (final two alterations in original)).  Therefore, we reverse the Commission on this issue.

**CONCLUSION**

Based on the foregoing, the Commission's order is reversed and the matter is remanded for further proceedings in accordance with this opinion.

**REVERSED AND REMANDED.**

**KONDUROS and VINSON, JJ., concur.**